**FILED**

APR 1 9 2011
APR 19, 2011
Judge Blanche M. Manning
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 634-2 |
| vs. | ) | |
| | ) | |
| KEITH A. HERRERA | ) | |

### PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant KEITH A. HERRERA, and his attorney, ROBERT D. KUZAS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The information in this case charges defendant with conspiring to violate persons' civil rights under color of law, in violation of Title 18, United States Code, Section 241 (Count One);  and filing a false 2005 federal income tax return, in violation of Title 26, United States Code, Section 7206(1) (Count Four).

3.      Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the Information: Count One, which charges defendant with conspiring with other Chicago Police Officers to violate persons' civil rights, in violation of Title 18, United States Code, Section 241; and Count Four, which charges defendant with filing a false 2005 federal income tax return, in violation of Title 26, United States Code, Section 7206(1).

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Four of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.    With respect to Count One of the information - the civil rights offense:

Defendant KEITH A. HERRERA and Jerome A. Finnigan were employed as Police Officers by the Chicago Police Department and assigned to the Special Operations Section, an elite city-wide unit; and

As Chicago Police Officers, defendant KEITH A. HERRERA and Jerome A. Finnigan were responsible for, among other things, enforcing the laws of the State of Illinois and the ordinances of the City of Chicago; investigating crimes committed in the City of Chicago; making lawful arrests; conducting lawful searches; collecting, preserving, and inventorying

2

evidence; making truthful and accurate reports of their official activities; and testifying truthfully concerning their official activities.

From 2003 through 2006, at Chicago in the Northern District of Illinois, Eastern Division, defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers assigned to the Special Operations Section, while acting under color of the laws of the State of Illinois and City of Chicago, did willfully conspire and agree with each other to injure, oppress, threaten and intimidate persons in the State of Illinois, namely certain persons in Chicago, in free exercise and enjoyment of a right and privilege secured by the Constitution and the laws of the United States, that is, the rights to be free from the deprivation of liberty and property without due process of law by one acting under color of law; in violation of Title 18, United States Code, Section 241.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, used and agreed to use their position and authority as Chicago Police Officers to unlawfully stop and detain persons, to unlawfully search persons and residences, to deprive persons of money without due process of law and to cause persons to be charged and detained based upon false evidence.

Defendant KEITH A. HERRERA, Jerome A. Finnigan and other Chicago Police Officers assigned to the Special Operations Section routinely and regularly performed unlawful arrests and unlawful searches for the purpose of conducting criminal investigations, and, when the opportunity arose, unlawfully took money for their own benefit from the

3

arrestees and the places being searched, including the persons and places described below.

## PERSON D

On November 11, 2004, on North Laramie Street in Chicago, defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, made a traffic stop of Person D without lawful basis.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, went to Person D's residence on West Hadden Street in Chicago, and, without a warrant or consent, unlawfully searched Person D's residence and took approximately $10,000 in United States currency.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, released Person D and divided among themselves the approximately $10,000 that they had taken from Person D's residence.

On January 14, 2005, after news accounts in which Person D claimed that Chicago Police Officers stole money from Person D's residence, defendant KEITH A. HERRERA, together with other Chicago Police Officers, agreed to and did provide false statements to the Internal Affairs Division of the Chicago Police Department during its investigation of the search of Person D's residence, namely denying an illegal search and the taking of money and falsely claiming that certain Chicago Police Sergeant was present at the search of Person D's residence. Defendant HERRERA and other Chicago Police Officers caused the Chicago

Police Sergeant to falsely represent to the Internal Affairs Division that he, the Chicago Police Sergeant, was present on the scene of the search of Person D's residence.

PERSON E

On May 17, 2005, on South Karlov Avenue in Chicago, defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, made a traffic stop of Person E without lawful basis.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, went to Person E's residence on South Karlov Avenue and, without a warrant or consent, unlawfully searched Person E's residence and took narcotics and approximately $30,000 in United States currency.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with Chicago Police Officers known to the United States Attorney, inventoried as evidence with the Chicago Police Department the narcotics and only approximately $463 of the money recovered from Person E's residence and caused Person E to be charged with possession of the narcotics recovered from Person E's residence based upon police reports which falsely represented that Person E discarded narcotics when approached and that a total of only $463 was seized from Person E's residence.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with Chicago Police Officers known to the United States Attorney, divided among themselves the

approximately $29,500 unlawfully taken from Person E's residence and not inventoried as evidence with the Chicago Police Department.

On September 9, 2005, on North Sacramento Boulevard in Chicago, defendant KEITH A. HERRERA and Jerome A. Finnigan, together with Chicago Police Officers known to the United States Attorney, made a traffic stop without lawful basis on Person E and cited Person E for traffic offenses which Person E did not commit, for the purpose of intimidating Person E so that Person E would not complain about the Chicago Police Officers taking money on or about May 17, 2005.

### PERSONS F and G

On August 12, 2005, after arresting Persons F and G, defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, without a warrant or consent, unlawfully searched Person F's residence on North Keeler in Chicago and took two firearms, 12 kilograms of cocaine, 25 pounds of marijuana, and approximately $88,000 in United States currency.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police Officers, inventoried as evidence with the Chicago Police Department the firearms, cocaine and marijuana and $1800 of the money taken from Person F, and caused Persons F and G to be charged based upon police reports which falsely represented that Persons F and G were each arrested in possession of a firearm and that the entry and search

of Person F's residence was lawful because Person F had fled and been pursued into his residence.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with Chicago Police Officers known to the United States Attorney, divided among themselves approximately $86,000 of the money that they had unlawfully taken from Person F's residence and not inventoried as evidence with the Chicago Police Department.

Defendant KEITH A. HERRERA's share of money unlawfully taken from arrestees in 2005 was approximately $40,000.

Defendant KEITH A. HERRERA and Jerome A. Finnigan, together with other Chicago Police officers, misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, the purposes of and the acts done in furtherance of the conspiracy.

        b.      With respect to Count Four of the information - the tax offense:

Defendant KEITH A. HERRERA resided in Chicago, Illinois, and was employed by and received gross income from the Chicago Police Department. During tax year 2005, defendant KEITH A. HERRERA also had and received approximately $40,000 in income by unlawfully taking money from arrestees for his own benefit.

On April 15, 2006, in the Northern District of Illinois, Eastern Division, defendant KEITH A. HERRERA willfully and knowingly made and caused to be made, subscribed and caused to be subscribed, a false 2005 United States Individual Income Tax Return, Form

7

1040, and accompanying schedules and forms, on behalf of defendant HERRERA, which was verified by a written declaration that they were made under penalty of perjury (which contained the defendant's PIN), which return and accompanying schedules and forms defendant HERRERA filed electronically and caused to be filed electronically with the Internal Revenue Service.

Defendant KEITH A. HERRERA did not believe his 2005 United States Individual Income Tax Return, Form 1040, and accompanying schedules and forms to be true and correct as to every material matter contained therein, in that defendant HERRERA represented and caused to be represented on that return that the Taxable Income of defendant KEITH A. HERRERA for the calendar year 2005 was $31,436; whereas, as defendant HERRERA then and there well knew and believed, the Taxable Income of defendant for the calendar year 2005 was approximately $72,236, defendant HERRERA having willfully omitted from his Taxable Income approximately $40,000 in United States Currency defendant HERRERA had unlawfully taken from arrestees for his own benefit; in violation of Title 26, United States Code, § 7206(1).

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## **Maximum Statutory Penalties**

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 10 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.     Count Four carries a maximum sentence of 3 years' imprisonment. Count Four also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Four, the judge also may impose a term of supervised release of not more than one year.

c.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 13 years' imprisonment. In addition, defendant is subject to a

9

total maximum fine of $500,000, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2010 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      Pursuant to Guideline § 3D1.1 and 1.2, which govern the procedure for determining offense level for multiple counts, Count One, the civil rights offense, does not group with Count Four, the tax offense.

ii.     Pursuant to Guideline § 2H1.1 (a)(1), the base offense level for Count One, the civil rights offense, is the offense level applicable to any underlying offense, which in this case is unlawful restraint.

10

iii.    Pursuant to Guideline § 2A4.1(a)(1), the base offense level for unlawful restraint is 32. No other enhancements under § 2A4.1 apply.

iv.    Pursuant to Guideline § 2H(b)(1), the base offense level is increased by 6 to 38, because defendant was a public official at the time of the offense and the offense was committed under color of law.

v.    Pursuant to Guideline § 2T1.1 (a)(1), the base offense level for Count Four, the tax offense, is the offense level from the tax table, Guideline § 2T4.1. Because the tax loss is approximately $10,400, the base offense level is 10, pursuant to Guideline § 2T1.1 (C).

vi.    Pursuant to Guideline § 2T1.1 (b)(1), because the defendant failed to report income from criminal activity the base offense level is increased by 2 to 12.

vii.    Pursuant to Guideline § 3D1.4, which governs the procedure for determining offense level for multiple counts, because the offense level for Count Four - the tax offense (12) is nine or more levels less than the offense level for Count One - the civil rights offense (38), there is no increase in the combined offense level.

viii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested

11

financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        ix.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 35, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 168 to 210 months' imprisonment, which is constrained by the 156 month combined statutory maximums of Counts One and Four, in addition to any supervised release and fine the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement.  Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.  Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraph b of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.     Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B).  Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by

13

either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois or by a representative of the Cook County States Attorney's Office. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5K1.l, to depart downward from the low end of the applicable Guideline range and to impose a period of incarceration.

14

Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## <u>Acknowledgments and Waivers Regarding Plea of Guilty</u>

### Nature of Plea Agreement

16.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 634-2.

17.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

18.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal tax case.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     Right to be charged by indictment.  Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members.  By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**.  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

18

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

c.    **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed.  Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or

19

ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        d.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

        20.     Defendant understands that he has the right to have the criminal charges in the information brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charges in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the information were brought.

### Presence Investigation Report/Post-Sentence Supervision

        21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government

will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the

returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request.

26.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(I).  In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than

returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

23

29.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

31.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _April 19, 2011_


PATRICK J. FITZGERALD
United States Attorney

KEITH A. HERRERA
Defendant


BRIAN P. NETOLS
Assistant U.S. Attorney

ROBERT D. KUZAS
Attorney for Defendant


JOHN ROBERT BLAKEY
Special Assistant U.S. Attorney


LYNN McCARTHY
Special Assistant U.S. Attorney


24