IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  07 CR 634-2 |
| v. | ) | |
| | ) | Judge Manning |
| KEITH HERRERA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

FACTS OF THE OFFENSE

The facts as related in the Government's Version of The Offense (made part of the Presentence Investigation Report, the "PRS") are accurate.

SENTENCING GUIDELINE CALCULATIONS

The defendant has no criminal history, and all agree that the defendant's criminal history category is I. The probation officer calculates the offense level in our case to be 39.  The Government calculates the level to be 35.  We agree with the Government's calculation.

The base level for count I, the civil rights violation, is, as the probation officer and the Government find, 32.  Six levels are added because the offense was committed under color of law.  The adjusted offense level becomes, then, 38.  The Government makes no further adjustments, and so its calculation of the total offense level is 38.  The probation officer makes one further adjustment, under the authority of Guideline 3D1.4, a "multiple count adjustment" of four levels, which increases the total offense level to 42. (PRS at 10).  We agree with the Government that the total offense level is 38 and not 42.

The probation officer incorrectly applies Guideline 3D1.4 in our case.  The Guideline is found in part D of Chapter Three of the Sentencing Guidelines.  Part D is titled "Multiple Counts."  Guideline

1

3D1.1(a)(1) provides a "Procedure for Determining Offense Level on Multiple *Counts*." (emphasis added). The first step is to "group the counts resulting in conviction into distinct groups of closely related counts***by applying the rules specified in section 3D1.2" . The Government correctly finds that Count One, the civil rights violation, does not group with Count Four, the tax offense. (Govt. Version at 5). The "combined group level applicable to all [g]oups taken together [is determined] by applying the rules specified in section 3D1.4." 3D1.1(3). Because the offense level for the tax count (12) is nine or more levels less than the civil rights count (38), the combined offense level remains at 38, as the Government correctly has found. (Govt. Version at 5). The probation officer applies 3D1.4 differently and incorrectly adds four levels to 38 and calculates a combined, total offense level of 42.

Guideline 3D1.4 is the final step in the Part D adjustment process in calculating a combined offense level for "multiple counts" that have been grouped. "This Part provides rules for determining a single offense level that encompasses all of the the *counts* of which the defendant is convicted.***The most serious offense is used as a stating point. The other *counts* determine how much to increase the offense level." Chapter 3, Part D, Introductory Commentary (emphasis added). As the Government has found, 3D1.4 dictates that the tax count, and the only other count of conviction, does not add to the combined offense level because "any Group that is 9 or more levels less serious than the Group with the highest offense level [is disregarded." 3D1.4(c).

The probation officer correctly finds that Count Four does not add to the offense level, (PRS at 11), but 3D1.4 is nonetheless applied to "adjust the offense level for the persons D, E, F, [and] G," (PRS at 10), persons who are named in Count One as persons whose victimization was "part of the conspiracy" to commit civil rights violations (Indictment, Count One). The individuals who fell victim of the one count of conspiracy do not represent separate counts within the indictment. The probation officer errs by considering each individual's victimization as if it were a separate count of the indictment, which each is not. In other words Guideline 3D1.4 seeks to adjust the most serious count

2

of an indictment if other *counts* of conviction are serious enough to justify an increase. The other, less serious, *counts* of conviction must be within eight levels of seriousness before they can add to the total offense level. Guidelines 3D1.1 through 3D1.4 look to the counts of conviction and do not sanction characterizing activity related within a given count as if they were themselves separate counts of an indictment.

So, the total offense level in our case, after an adjustment for acceptance of responsibility, is 35. The advisory guideline range (I/35) is 168-210 months.

### THE MAXIMUM STAUTORY PENALTIES

The statutory maximum penalty for the civil rights violation, 18 U. S. C., sec. 241, is 10 years. The maximum statutory penalty for the tax violation, 26 U.S.C., sec. 7206(1), is three years. The maximum penalty that may be imposed is, then, 13 years.

### THE PLEA AGREEMENT

The Government has agreed to move the court, pursuant to Guideline 5K1.1, to depart downward from the low end of the applicable, advisory Guideline range, 168-210 months, and recommends only that a sentence of imprisonment be imposed.

### THE DEFENDANT'S SENTENCING RECOMMENDATION

The advisory Guideline range in our case is constrained by the statutory maximum penalty (156 months). Nonetheless, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The question becomes what value does a benchmark advisory sentencing range have if it is above the maximum statutory sentence that may be imposed. In other words, where the legislature has determined a maximum penalty for an offense that is below the advisory Guideline range, the *mandatory* sentencing range becomes, absent a mandatory minimum, from zero (probation) to the statutory maximum. Given this mandatory sentencing range, the court then must consider "all of the

section 3553(a) factors to determine [the appropriate sentence]." *Gall*, 552 U.S. at 49-50. The court's discretion in choosing a sentence within this mandatory range is cabined by one factor, "the court's obligation to arrive at a reasonable sentence[.]" *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006). "Reasonable" in our case is a lenient sentence—one close to the low end of the mandatory range.

A starting point in determining a reasonable sentence is the Government's recommendation that the court "depart downward from the low end of the applicable Guideline range." (Govt. Version at 6). With the sentencing Guidelines, "[a]fter *Booker,* [now] advisory, departures have become obsolete." *Blue*, 453 F.3d at 952. However, the Government's recommendation to "depart" pursuant to Guideline 5K1.1 retains meaning. "*Booker* may have rendered departures obsolete, but the rationale for rewarding defendants who have been helpful to the government with below-Guideline sentences remains: it arms the government with an inducement that can be used to solve old crimes and deter new ones." *Blue*, 453 F.3d at 952-53. (citation omitted) (internal quotation marks omitted). The mechanism that allows the court to consider the defendant's cooperation in the post-*Booker* world is the statutory command that the court consider "the history and characteristics of the defendant." 18 U.S.C., sec. 3553(a)(1). In our case the defendant's cooperation provides a history and characteristic that should be rewarded.

Cooperation is valuable, as the court in *Blue* recognized, when it "deter[s] new [crimes]." In our case the defendant's cooperation went beyond deterrence; it demonstrably prevented a crime from occurring. The PRS details the defendant's actions in disclosing Jerome Finnigan's murder-for-hire plan to kill at least one fellow officer." (PRS at 7). Mr. Herrera's continuing cooperation involved his wearing a listening device "to gather evidence***against Finnigan." (PRS at 7). The court must decide, in considering the defendant's history and characteristics (sentencing factor (a)(1)), what value to assign to Mr. Herrera's actions in preventing a crime from occurring. The case agent in our case, Special Agent Keese, is of the opinion that "the defendant's cooperation 'very well' could have saved

4

the lives of the officer's targeted by Finnegan." (PRS at 7). A significant departure from the statutory maximum of 13 years is warranted.

The court in choosing an appropriate sentence is directed by the legislature to "consider***the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. 3553 (a)(6) (sentencing factor (a) (6)) . In considering the sentences received by the other officers[1], Agent Keese is of the opinion that Mr. Herrera "should receive 'no more ' than the***six month sentences received by [the] others." (PRS at 7). The prosecutor in our case states in the PRS "that the defendant ranks in the 'lower half' in terms of culpability when compared to the other ten officers involved in the instant offense." (PRS at 7).

Many people in their request for leniency have submitted letters in support of Keith Herrera. Each acknowledges his debt to society that his actions have created. At the same time, each speaks of his good character. The words of one writer, a retired policeman, are particularly apt. The defendant, in cooperating and foiling a murder plot said that he, "had to take a stand and put a stop to this criminality," writes Thomas J. Sherry. At the same time the defendant knew that he "would have to admit to his part in his past crimes and take full responsibility."

The consideration of sentencing factors (a) (1) and (a)(6) in our case supports lenity. A sentence at the tail end of the mandatory sentencing range (from probation to 156 months incarceration) would be fair and just, and therefore reasonable.

Respectfully submitted,

s/ <u>Robert D. Kuzas</u>

Law Offices of Robert D. Kuzas, Ltd.
222 North LaSalle St. Suite # 200
Chicago, IL  60601
312.629.1400

---

[1] Seven officers pled guilty in state court and received sentences of probation, five of those sentences included jail sentences of six months incarceration.